IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| B.B., by and through his Parents,<br>CATHERINE B. JIMMY B., | )<br>)<br>) | |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | Civ. No. 16-806-SLR |
| DELAWARE COLLEGE PREPARATORY<br>ACADEMY, and DELAWARE<br>DEPARTMENT OF EDUCATION, | )<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

**MEMORANDUM**

At Wilmington this $\cancel{8h}$ day of May, 2017, having reviewed the defendant's motion to dismiss and papers submitted in connection therewith, the court issues its decision as follows:

1. **Introduction.** Plaintiff B.B. (the "plaintiff"), by and through his parents Catherine B. and Jimmy B. (the "parents"), brought this action against defendants Delaware College Preparatory Academy ("DCPA") and the Delaware Department of Education (the "DDOE") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and its federal and state implementing regulations, including 14 Del. Admin. C. § 922 et seq. (D.I. 1) Pending before the court is the DDOE's motion to dismiss the complaint. (D.I. 4) Because the court finds that the complaint is untimely, it grants the motion.

2. **Background.** The IDEA requires states receiving federal education funding to provide a free appropriate public education ("FAPE") to disabled children.

*Coleman v. Pottstown School Dist.*, 581 Fed. App'x 141, 146 (3d Cir. 2014); 20 U.S.C. § 1400(d)(1)(a). A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 268–69 (3d Cir. 2012) (internal punctuation omitted). An individualized education program ("IEP") is a written plan created by a team that includes the child's parents and teachers. 20 U.S.C. § 1414(d)(1)(B). The IEP sets forth the package of special educational and related services that are to be provided to the disabled child. *Carlisle Area Sch. Dist. v. Scott P.*, 62 F.3d 520, 526 (3d Cir. 1995); *Geis v. Bd. of Educ. of Parsippany-Troy Hills, Morris Cty.*, 774 F.2d 575, 578 (3d Cir. 1985). The team must review the IEP "not less than annually" and make revisions as appropriate to ensure that the child is still receiving a FAPE that meets his or her unique needs. 20 U.S.C. § 1414(d)(4)(A).

3. The IDEA establishes several procedural safeguards for the parents of a disabled child, including the right to present a complaint "with respect to any matter relating to … the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). If the school district does not resolve the complaint to the parents' satisfaction, the parents have the right to request an impartial due process hearing held before a panel (the "hearing panel") appointed by the Secretary of the DDOE. 20 U.S.C. § 1415(f)(1); 14 Del. C. §§ 3135. Absent two exceptions—neither of which plaintiff invokes here—the parents must request a hearing "within 2 years of the date

2

the parent[s] ... knew or should have known about the alleged action that forms the basis of the complaint."[1] 20 U.S.C. § 1415(f)(3)(C).

4. B.B. attended Red Clay Consolidated School District ("Red Clay") at the West End Head Start preschool during the 2012-2013 school year. (D.I. 1 at ¶ 17) Red Clay identified B.B. as a student eligible for and in need of special education services. (Id. at ¶ 19) On November 30, 2012, a team with Red Clay developed an IEP for B.B. that included speech and language therapy six times per month, for 30 minutes per session. (Id.) In August 2013, B.B. entered the kindergarten class at DCPA, a public charter school. (Id. at ¶¶ 10, 20, 23) By November 30, 2013, DCPA had not evaluated B.B. for special education services, provided any special education services to him, or ensured that the IEP team conducted its annual review of the IEP as required. (Id. at ¶ 20)

5. Three months later, on February 20, 2014, B.B.'s mother, Catherine B., sent a letter to the DCPA noting that the IEP was over a year old and requesting that DCPA evaluate B.B. (Id. at ¶ 22) The next day, February 21, 2014, parents' counsel, on behalf of B.B., filed a due process complaint (the "first complaint") alleging that DCPA had denied B.B. a FAPE by failing to update the IEP and failing to provide B.B. with special education services for the 2013-2014 school year. (Id. at ¶ 23) The first complaint requested that DCPA fund an outside evaluation of B.B. to determine his academic levels and speech and language therapy needs. (Id.) On February 24, 2014, DCPA sent parents, among other things, a copy of the Delaware Procedural Safeguards

---

[1] Those exceptions are: (1) the school district misrepresented that it had resolved the problem forming the basis of the complaint; or (2) the school district withheld information from the parents that it was required to provide. 20 U.S.C. § 1415(f)(3)(D).

3

Notice, which contains information regarding the statute of limitations for filing a due process complaint.[2] (D.I. 4-1 at p. 12 ¶ 9) In May 2014, parents voluntarily withdrew the first complaint in order to seek the assistance of new legal counsel. (D.I. 1 at ¶ 23)

6. In August 2014, parents filed a second due process complaint (the "second complaint") against the DCPA. (*Id.* at ¶ 27) No new IDEA violation was alleged. (D.I. 4-1 at p. 10 ¶ 6) The second complaint asked DCPA to fund an independent educational evaluation of B.B. (D.I. 1 at ¶ 27) In September 2014, parents withdrew the second complaint, because B.B. had transferred to a new school. (*Id.*)

7. In December 2015, the Red Clay school board voted to revoke DCPA's charter. (*Id.* at ¶ 28) Upon parents' information and belief, DCPA has ceased operations, but still maintains a legal existence. (*Id.* at ¶ 10) On April 1, 2016, parents filed a third due process complaint (the "third complaint"), which named as respondents both DCPA and DDOE. (*Id.* at ¶ 29) The educational injuries alleged in the third complaint are the same as those alleged in the first complaint and second complaint. (D.I. 4-1 at 10 ¶ 6) Nevertheless, the third complaint alleges that, since DCPA had lost is charter, DDOE had become legally responsible for providing a FAPE to B.B. (D.I. 1 at ¶ 3) On June 16, 2016, the hearing panel issued a written opinion and order dismissing the third complaint based on the IDEA's two-year statute of limitations and the doctrine of latches. (*Id.* at ¶ 4; D.I. 4-1)

8. **Standard of Review.** Any party "aggrieved by the findings and decision" of the hearing panel may appeal the decision to a United States District Court. 20

---

[2] Around this time, the DDOE also sent parents a copy of the Procedural Safeguards Notice. (D.I. 4-1 at p. 21)

U.S.C. § 1415(i). The district court applies a "modified de novo" standard of review to the hearing panel's decision. *S.H. v. State–Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). This requires the court to give "due weight" to the factual findings of the administrative panel, meaning they are considered prima facie correct. *Id.* Where the court declines to adhere to those factual findings, it must explain why. *Id.*

9. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court's review is limited to the allegations in the complaint, exhibits attached to the complaint, documents incorporated by reference, items subject to judicial notice, and matters of the public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *D.M. ex rel. Ray v. Phila. Housing Auth.*, 613 Fed. App'x 187, 189 (3d Cir. 2015); *El-Hewie v. Bergen Cty.*, 348 Fed. App'x 790, 794 (3d Cir. 2009) (explaining that the "public record" includes administrative decisions). The allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

10. **Discussion.** As explained above, the IDEA contains a two-year statute of limitations. 20 U.S.C. § 1415(f)(3)(C). "[T]he limitations period of § 1415(f)(3)(C) 'begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting the violation—whichever comes first.'" *G.L. v. Ligonier Valley School Dist. Auth.*, 802 F.3d 601, 614 (3d Cir. 2015) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010)). The same injuries form the basis of plaintiff's first

5

complaint, second complaint, and third complaint, i.e., that DCPA denied B.B. a FAPE by failing to update the IEP in November 2013 and by failing to provide B.B. with special education services for the 2013-2014 school year. Parents should have known of the alleged injuries to B.B. by November 30, 2013, when parents, as part of the IEP team, were not asked to participate in any meetings regarding an update to the IEP. Nevertheless, parents actually knew of the alleged injuries by February 2014 when Catherine B. sent a letter to the DCPA asking it to remedy those very same injuries. The third complaint was not filed until April 1, 2016, more than two years later. Accordingly, the third amended complaint must be dismissed as untimely under the statute of limitations provided in the IDEA.

11. Plaintiff does not dispute that the injuries alleged in the third complaint are the same as the injuries alleged in his other complaints or raised in the February 2014 letter. Instead, plaintiff argues that dismissal is not warranted, because a Rule 12(b)(6) motion to dismiss is an improper procedural vehicle for considering a statute of limitations defense. (D.I. 6 at ¶¶ 31-38) In particular, plaintiff argues that this defense improperly relies on matters extraneous to the pleadings. (*Id.*) The court disagrees. The Third Circuit has made clear that a court may grant a Rule 12(b)(6) motion to dismiss based on a statute of limitations defense if it is apparent on the face of the complaint that the action is time-barred. *Singer v. Bureau of Prof'l & Occupational Affairs*, 523 Fed. App'x 185, 186 (3d Cir. 2013). Moreover, "[a]s with motions to dismiss generally, in considering a statute of limitations defense, [the court] may consider not only the allegations in the complaint but also exhibits attached to the complaint and matters of public record." *Gould v. Borough*, 615 Fed. App'x 112, 115 (3d. Cir. 2015).

6

Here, the complaint itself alleges that parents complained to the DCPA in February 2014 of the same injuries that form the basis of the third complaint. Accordingly, it is apparent from the face of the complaint that it is untimely, and the court may properly dismiss the complaint at this stage of the proceedings based on a statute of limitations defense.

12. **Conclusion.** For the foregoing reasons, DDOE's motion to dismiss (D.I. 4) is granted, and the complaint is dismissed with prejudice. DDOE has also moved to strike paragraph 14 of plaintiff's unopposed motion for an extension of time to serve process on DCPA. (D.I. 14) On December 12, 2016, the court granted plaintiff's motion for extension of time, but has not yet addressed DDOE's motion to strike. Because the court has granted the motion to dismiss with prejudice, the motion to strike is now denied as moot. An appropriate order shall issue.

_____
Senior United States District Judge